UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MELINDA SMITH     CIVIL ACTION NO. 05-1603

versus     JUDGE HICKS

COMMISSIONER OF THE SOCIAL     **REFERRED TO:**
SECURITY ADMINISTRATION     **MAGISTRATE JUDGE HORNSBY**

## MEMORANDUM RULING

**Introduction**

Melinda Smith ("Plaintiff") applied for benefits based primarily on the effects of a fractured right hip and knee pain that resulted from a car accident. Plaintiff has a high school education and past work experience as a cashier. Plaintiff was 26 years old when the ALJ rendered the final decision in her case.

Plaintiff's case was originally heard by ALJ Larry Butler who, in 2004, found that Plaintiff had the residual functional capacity ("RFC") to perform a wide range of sedentary work and that the Medical-Vocational Guidelines, used as a framework, resulted in a finding that Plaintiff was not disabled. Tr. 214-20. The Appeals Council granted Plaintiff's request for review and remanded the case for possible clarification of an ambiguity in the evidence, an assessment of how Plaintiff's obesity affects her RFC, and more explanation with respect to Plaintiff's limitations and their effect on the occupational base. Tr. 226-28.

On remand, ALJ Thomas Bundy held another hearing and issued a new decision. The

ALJ analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). He found that Plaintiff had not engaged in substantial gainful activity (step one) and that she suffered from post-Pipkin I fracture/dislocation of the right hip and obesity, impairments that are severe within the meaning of the regulations (step two), but not severe enough to meet or medically equal a listing (step three).

He then thoroughly reviewed the medical evidence and testimony and found that Plaintiff had the RFC to lift and carry 10 pounds occasionally and between 5-10 pounds frequently, sit for approximately 6 hours of an 8-hour work day and walk and stand intermittently up to 2 hours in an 8-hour work day. He also found that Plaintiff could occasionally climb (but not ladders, ropes and scaffolds), balance, stoop, kneel, crouch and crawl and can perform occasional, but not repetitive, push/pull with the right lower extremity. He next considered the effect of Plaintiff's obesity and determined that it does impose significant limitations, which are reflected in the assessed RFC. He then determined Plaintiff's RFC did not permit her to perform her past relevant work (step four). At step five, the ALJ used the Medical-Vocational Guidelines as a framework for a decision that, considering Plaintiff's RFC and relevant vocational factors, she was capable of performing the demands of other work available in the economy so was not disabled. Tr. 16-27.

The Appeals Council denied a request for review. Plaintiff then filed this civil action seeking the limited judicial relief that is available pursuant to 42 U.S.C. § 405(g). Both parties filed written consent to have a magistrate judge decide the case and, pursuant to 28 U.S.C. § 636(c) and the standing order of the district court governing social security cases, the action was referred to the undersigned for decision and entry of judgment. For the reasons that follow, the Commissioner's decision to deny benefits will be affirmed.

**Issues on Appeal**

Dr. Charles Werner and Dr. John Ferrell conducted consultative examinations. Dr. Werner included in his findings that Plaintiff could sit for 6 hours of an 8-hour work day with "½ breaks." Plaintiff argues that ALJ Bundy erred in not contacting Dr. Werner to clarify what he meant by "½ breaks" and by finding the issue of work breaks to be moot. Plaintiff also argues that the ALJ erred in ignoring Dr. Ferrell's opinion that allegedly limited Plaintiff's workday to no more than 6 hours. Plaintiff next complains that the ALJ rewrote, by fiat, the opinion of Dr. Ferrell. Finally, Plaintiff argues that the ALJ should have included pain (from her fractured hip) as a severe impairment.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Medical Evidence**

Plaintiff was in a car accident in 2001 and sustained a fracture and dislocation of her right hip that required surgery. A few months after Plaintiff was released, she reported to an emergency room with complaints of pain in her right hip after a fall. Plaintiff left before she saw a physician because she said she had "to go pick up my husband." Tr. 197-98. Plaintiff reported to the emergency room about six months later, in July 2002, and reported a two day history of pain in her hip after slipping. The physician prescribed Ultram, noted that Plaintiff had crutches at home, and suggested a followup visit to orthopedics, but there is no indication that the visit took place. Tr. 184-88.

Plaintiff was referred to Dr. David Adams for a consultative evaluation of her complaints of pain in her right hip and knee. Dr. Adams found that Plaintiff had motor strength of 5/5 in both legs, decreased pin-prick sensation in her right thigh, and equal and active reflexes at the knees and ankles. Electrodiagnostic testing found no evidence of radiculopathy, neuropathy, myopathy, femoral or sciatic neuropathy in the right lower extremity. Tr. 160.

Dr. Marion Milstead treated Plaintiff after her accident. In April 2003 Dr. Milstead

reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Medical Evidence**

Plaintiff was in a car accident in 2001 and sustained a fracture and dislocation of her right hip that required surgery. A few months after Plaintiff was released, she reported to an emergency room with complaints of pain in her right hip after a fall. Plaintiff left before she saw a physician because she said she had "to go pick up my husband." Tr. 197-98. Plaintiff reported to the emergency room about six months later, in July 2002, and reported a two day history of pain in her hip after slipping. The physician prescribed Ultram, noted that Plaintiff had crutches at home, and suggested a followup visit to orthopedics, but there is no indication that the visit took place. Tr. 184-88.

Plaintiff was referred to Dr. David Adams for a consultative evaluation of her complaints of pain in her right hip and knee. Dr. Adams found that Plaintiff had motor strength of 5/5 in both legs, decreased pin-prick sensation in her right thigh, and equal and active reflexes at the knees and ankles. Electrodiagnostic testing found no evidence of radiculopathy, neuropathy, myopathy, femoral or sciatic neuropathy in the right lower extremity. Tr. 160.

Dr. Marion Milstead treated Plaintiff after her accident. In April 2003 Dr. Milstead

wrote a "to whom it may concern" letter for Plaintiff that described her medical history and noted that Plaintiff had permanent residual problems with the sciatic nerve related to the dislocation, as well as continued arthritic changes in the hip. Dr. Milstead predicted that Plaintiff would always have difficulties that would slowly worsen and would require constant treatment. He concluded that Plaintiff had permanent restrictions from doing any type of work that required "prolonged standing, prolonged walking or squatting or bending." Tr. 203-09.

Dr. Charles Werner conducted a consultative examination in February 2003. Plaintiff reported to him that her pain was constant and keeps her awake occasionally. She said she could sit for only 15 minutes, stand for one or two hours and walk only 100 feet. Her relevant medications at the time were Vioxx and ibuprofen. Plaintiff was reported to be 5' 4-1/2" and weighed 316 pounds. Plaintiff had no tenderness or swelling in her knees, and her gait and station were steady and normal, and she could stand on her toes and heels. She was able to squat half-way down and get up. She could get on and off the exam table and in and out of a chair without difficulty. Her grip strength was 5/5. X-rays indicated that the right hip was "very good healing and alignment with mild loss of joint space" and that the right knee was "normal." Dr. Werner then made the following findings:

> Most of her problems are due to the extreme obesity as seen by the insignificant findings on the xrays. She can sit for 6 hours total during the work day but will probably need ½ breaks. She can stand and walk for about 10-15 minutes at one time for a total of 4-6 hours. She can lift, push or pull about 5 pounds of work in all extremities. She should avoid climbing a ladder but can occasionally climb 5-10 stairs, crawl, stoop, crouch, and balance. She

has no manipulative, communicative or environmental limitations. Once again her main limiting factor is her morbid obesity.

Tr. 201-02.

Dr. John Ferrell conducted a consultative examination about two years later, in March 2005. Plaintiff was then taking Tylenol No. 3 and Vioxx for pain. She was reported to be slightly taller at 5' 6" and slightly lighter at 290 pounds. Plaintiff complained of knee pain, but the examination showed no instability. Dr. Ferrell guessed that the knee pain could be secondary to some referral of pain from the hip. Plaintiff walked without significant limp, and the range of motion in her hips was not seriously limited. Dr. Ferrell then concluded:

> I would limit her to a more sedentary limited ambulatory work capabilities. Appropriate forms were filled out. I would limit her walking to less than two hours in an 8-hour workday. She does complain of some hip cramping with sitting and I would limit her to a six-hour workday. I would limit the use of her right leg secondary to her right hip fracture for repetitive use of foot controls. I would not allow her to climb, balance, kneel, crouch, crawl or stoop. Her upper extremity has no limitations. Seeing, hearing, speaking, ability to communicate and cognitive abilities are normal.

Tr. 242-43.

**Analysis**

Before turning to the specific issues raised by Plaintiff, the court notes that ALJ Bundy discussed the medical reports summarized above, as well as other evidence in great detail. He also set forth at length the testimony received at both the original and second hearing. Most important, he specifically discussed the weight he afforded the various opinions and the reasons he assigned such weight. He also discussed at length the facts that he found relevant to his assessment of Plaintiff's credibility.

Plaintiff argues that the ALJ should have contacted Dr. Werner to clarify what he meant in his report when he said that Plaintiff would require "½ breaks" and by finding that the work breaks issue was moot. Plaintiff suggests that the Appeals Council ordered that Dr. Werner be contacted on this point, but the remand decision states: "Further evaluation is needed, including recontact for clarification, *if appropriate*." (emphasis added) Tr. 226. The ALJ, when assessing the weight of the physicians' opinions, noted Dr. Werner's "vague qualifier" of ½ breaks, but observed that neither Dr. Milstead nor Dr. Ferrell had indicated that Plaintiff would need an excessive number or length of breaks. Then, considering the evidence of record as whole, the ALJ found that Plaintiff could sit for 6 hours in a workday with usual/customary breaks, rendering moot the need to clarify Dr. Werner's statement.

Plaintiff responds that neither Dr. Milstead nor Dr. Ferrell were asked to opine about any need for breaks, and that is correct. Their lack of specific comment on the possible need for breaks may not automatically moot the issue, but their general findings about Plaintiff's abilities and the other evidence of record do provide substantial evidence for the ALJ's determination that Plaintiff would not need more than the usual/customary breaks when performing sedentary work. There was evidence that a reasonable mind could accept as adequate to support that conclusion, so the ALJ's decision is not subject to judicial reversal on these grounds.

Plaintiff next argues that the ALJ ignored Dr. Ferrell's opinion that limited her work day to no more than 6 hours and, in effect, rewrote Dr. Ferrell's opinion. Dr. Ferrell's

findings, quoted fully above, first discuss Plaintiff's ability to walk for a number of hours in an "8-hour workday." He then discusses Plaintiff's problems with hip cramping when sitting and follows that by a statement that he would "limit her to a 6-hour workday." Plaintiff argues that Dr. Ferrell limited Plaintiff, overall, to working only 6 hours a day and that the ALJ ignored that finding. A review of the relevant portion of the ALJ's decision at Tr. 23-24 shows that he read Dr. Werner's reference to a 6-hour limit to refer to Plaintiff's ability to sit in an 8-hour workday, not the total numbers of hours Plaintiff could work in a day. That is the most reasonable construction of Dr. Ferrell's report. The likelihood, given the slight ambiguity on this point and the context of Dr. Ferrell's overall report, that Dr. Ferrell actually meant that he believed Plaintiff could not work more than 6 hours in a workday is so slight that reversal and remand are not warranted.

Plaintiff also argues that the ALJ should have included pain from her hip as a severe impairment. The ALJ discussed Plaintiff's testimony (including claims of pain) from both hearings (Tr. 20-21), and he discussed his assessment of Plaintiff's credibility at Tr. 22. Among the factors he considered in assessing credibility were Plaintiff's claims of pain and related factors. He noted that Plaintiff had not required strong medications and used only ibuprofen for pain relief. There was also no indication that Plaintiff had sought treatment in the past year, and the medical reports showed no significant signs of continuing problems with the hip or knee. Plaintiff's daily activities included a good deal of time spent on the computer and watching television, which the ALJ found indicated that Plaintiff probably

spent much of her day sitting, which was inconsistent with testimony that she could sit for only 10 or 15 minutes at a time. Also undercutting that claim was Plaintiff's statement that she could drive for 20 to 25 minutes. Accordingly, Plaintiff's testimony, the most significant source for finding pain to be a severe impairment, was deemed not persuasive. An ALJ's findings on credibility of the claimant and the debilitating effect of subjective symptoms, based on his first-hand observation of the claimant, are particularly within his province and entitled to judicial deference. Johnson v. Bowen, 864 F.2d 340, 347 (5th Cir. 1988); Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994). Assuming the ALJ should have found pain was a severe impairment at step two, Plaintiff has not identified any limitations stemming from the pain, required to be recognized under the substantial evidence standard, that would limit her RFC beyond the already extraordinarily limited RFC assessed by the ALJ.

Dr. Ferrell said that he would not allow Plaintiff to ever climb, balance, kneel, crouch, crawl or stoop. Tr. 243. The ALJ discounted that finding, noting that Plaintiff could walk and sit, which require the ability to balance and stoop, respectively. The ALJ noted that Dr. Werner found that Plaintiff could occasionally perform postural functions, a finding that was not inconsistent with the opinion of the treating physician, and he afforded great weight to Dr. Werner's opinion on that point. Plaintiff faults the ALJ's logic that an ability to walk and sit mean that a person can also balance or stoop, but the ALJ's decision to discount Dr. Ferrell's finding on that point was not based on such a narrow analysis. The challenged statement was merely one component of an analysis of all of the evidence. It is the role of

the ALJ to assess the relative weight of competing physician opinions, and the ALJ did so in this case with a specific articulation of reasons. It is the role of the court to review that decision for support by substantial evidence, and it is not within the permissible scope of judicial review for the courts to weigh the evidence anew and overturn the decision based on its interpretation. The decision is not subject to reversal based on this argument.

The ALJ did not find that there was nothing wrong with Plaintiff. Rather, he found that she had a quite limited RFC. Plaintiff could, under the Guidelines, perform the demands of available work despite her significant limitations so was not disabled. For the reasons stated above, that decision is supported by substantial evidence and will be affirmed.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 31st day of July, 2006.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE